## UNITED STATES v. UNITED GAS CORPORATION.

### No. 10294.

Circuit Court of Appeals, Fifth Circuit.

March 24, 1943.

Brian S. Odem, Asst. U. S. Atty., of Houston, Tex., for appellant.

W. M. Ryan, of Houston, Tex., for appellee.

Before SIBLEY, HOLMES, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

United Gas Corporation by due procedure sued the United States in the District Court to recover $2,668.14 as a balance due for gas furnished to Fort McIntosh Military Reservation at Laredo, Texas, between the dates February 20, 1938, and June 30, 1940. This balance is the difference between bills figured on a rate of $.675 per thousand cubic feet and a rate of $.55 which was paid. By counterclaim the United States asserted that under its contracts with the Gas Corporation it was entitled to a rate of $.55 since January 1, 1932, the date that such rate became effective under an order of the Texas Railroad Commission, so that it not only did not owe what was sued for, but was entitled to recover back an excess paid of $7,648.82.

The facts were mainly stipulated, and are not in dispute. The original contract was made in 1925 with a predecessor gas company, but has been assumed and continued by United Gas Corporation until June 30, 1940. It states that gas is to be furnished for fuel purposes through the Company's pipes and meters, the meter to be read each month and tested once each year, bills to be rendered and paid monthly, at a flat rate of $.675 per thousand feet. "Change of rates. If during the life of this contract the City Council, Laredo, Texas, having jurisdiction, authorizes rates that are higher or rates that are lower than those stipulated herein for like conditions of service, the contractor hereby agrees to continue to furnish gas as stipulated in this contract and the United States agrees to pay for such gas at the higher or lower rates from and after the date such rates are made effective." Later the Gas Company was given a license to operate gas pipes in the reservation on condition that the United States be supplied gas at rates which should "never exceed those charged other customers furnished gas under similar conditions of service"; and an easement conditioned that gas rates "shall never exceed the most favorable rates granted by the grantee for similar gas service." The City of Laredo in 1931 ordered a rate of $.40 cents for gas "for domestic use", which on appeal to the Railroad Commission was made $.55, effective January 1, 1932. No other change in rates was made. The United States contends that it is entitled to the rate of $.55 on all of its gas since that date. The Gas Corporation contends that the "conditions of service" to domestic users in Laredo are not like those on the reservation, so that the change in rate has no effect on the rate of the United States. The district judge held with the Gas Corporation. Hence this appeal.

The contracts involved are to be given effect according to the intention of the parties. The new rate, though fixed by the Railroad Commission on appeal, was initiated by the City Council, and is clearly a lower rate made by authority of the City Council within the meaning of the original contract. It was, however, expressly limited to gas for "domestic use". We are of opinion that it ought to be given effect at Fort McIntosh in so far as gas there was

consumed for domestic use, but no further, because to that extent only was the rate for like service. The evidence shows that in the military reservation there is a meter for each building; more than a hundred meters in all, each read and billed every month. Of these 49 are listed as residences. The gas service in these residences is precisely what it is in a dwelling in the City of Laredo. The sole difference is that only one itemized bill is rendered instead of 49 bills. The use of the gas in these residences is strictly domestic use.

Other meters serve offices, warehouses, carpenter and plumbing and electric shops, motor shops, hospital, fire station, post exchange, tailor shop, gymnasium, swimming pool, commissary, mess halls, barracks, and latrines. These do not appear to be domestic uses, in the vocabulary of rates, and are not similar to domestic uses in the city. The original contract refers to the Laredo rate structure as it then was (and as it still remains except for the change of rate for domestic use) in a statement at its end that the contract rate of $.675 is not in excess of the lowest rates now available to any prospective customer under like conditions of service. The rates available were: No. 1, $.75 per 1000 cu. ft., subject to discount of 10%, if paid within ten days from date of bill, "applicable to natural gas service for cooking, water heating, space heating, and other domestic appliance uses in residences, individual family apartments, and commercial establishments for which no specific schedule is provided." No. 2. rate, $.60 per 1000 cu. ft. with like 10% discount, applicable to hotels, restaurants and bakeries and central heating plants. No. 3, No. 4, and No. 5, still lower, were applicable to large boilers, schools, churches and municipal buildings, and industrial establishments of large capacities. Now the rate of $.675 given the United States is rate No. 1 less the 10% discount. It is higher than each of the other rates. The acceptance of it then, and in renewals prior to this dispute, as not in excess of other available rates for like conditions of service, indicates to us that the contracting parties have recognized that the service at the Fort was not like that under rates Nos. 2, 3, 4, or 5, which were lower, but were like that under No. 1, which rate was adopted as the lowest then available, the discount being allowed at all events. The service at the Fort, compared with that under rate No. 1, was domestic in part, and in part commercial for which no specific schedule was provided. The effect of the Railroad Commission's order was to create a new rate of $.55 for domestic uses, but to leave rate No. 1 otherwise in force. In so far as the use at the Fort was domestic, that is in homes or in residence apartments, the United States is entitled to the benefit of the new rate. Otherwise, its rate stands unchanged.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.